UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATINA ANN PARKER,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:14-cv-00763-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Katina Ann Parker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1] Having carefully considered the parties' briefs, as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record and based upon proper legal standards. Accordingly, the Court affirms the Commissioner's determination.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 7, 8).

1

**FACTS AND PRIOR PROCEEDINGS[2]**

On January 12, 2011, Plaintiff filed an application for supplemental security income for disability beginning December 25, 2008. AR 14. The Commissioner initially denied the claim on May 9, 2011, and upon reconsideration on October 12, 2011. AR 14. Plaintiff filed a timely request for a hearing. On December 7, 2012, Plaintiff, represented by Susan K. Medina, testified at the hearing. AR 29-65. On December 17, 2012, Administrative Law Judge ("ALJ") Christopher Larsen denied Plaintiff's application. AR 65. On April 2, 2014, the Appeals Council denied review. AR 1. This appeal followed.

**Hearing Testimony**

ALJ Larsen held a hearing on December 7, 2012, in Fresno, California. AR 29-65. Plaintiff appeared and testified. AR 31. She was represented by attorney Susan K. Medina. AR 31. Impartial Vocational Expert ("VE") Alan Cummings also testified. AR 28.

Plaintiff was born August 26, 1973, and was thirty-seven years old at the time of the hearing. AR 22. She currently lives with her parents and has custody of her ten-year-old son every other week. AR 46. Plaintiff testified that she has been unable to work due to manic bipolar depression and anxiety. AR 34.

When asked about her mental impairments, Plaintiff stated that she is currently seeing Drs. Baca and Liu for her psychological problems. AR 34. Plaintiff stated that she currently receives prescription medications from Dr. Liu for her mental condition but she was recently diagnosed with a tumor in her pituitary gland so her medications were changed to accommodate for the increase in her stress and anxiety. AR 34-35. Plaintiff sees psychologist Dr. Baca for counseling services usually every week. AR 41. Plaintiff has also seen non-licensed counselor Heather Carrier for her mental health impairments. AR 42. Plaintiff testified that she has a lot of anger and will have yelling and screaming episodes she is unable to control. AR 53-54.

When asked about her physical impairments, Plaintiff explained that she is going blind from the tumor in her pituitary gland. AR 35-36. Plaintiff was sent to eye specialist Dr. Fogg who

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

recommended surgery for her tumor to prevent blindness. AR 36. Plaintiff stated she has not scheduled the surgery because she is waiting on her doctors for a referral. AR 39-40. Plaintiff also explained that she has constant headaches from the tumor and in the past year she was forced to go to St. Agnes Hospital to seek treatment for pain. AR 36-37. Plaintiff also thinks that her tumor caused a seizure-like episode during which she had trouble waking; when she was finally able to wake up she was yelling and her body was shaking. AR 37. Plaintiff saw her primary care doctor, Dr. Ramesh for the incident and Dr. Ramesh reported the episode to the Department of Motor Vehicles ("DMV"). AR 39. The DMV subsequently revoked Plaintiff's license. AR 39. Plaintiff stated she does not think she will be able to get her license back because she would have trouble remembering the DMV rules to pass the driver's written test. AR 54. Plaintiff also explained that she has stomach problems that cause her diarrhea, constipation and vomiting, which all increase with her stress and anxiety. AR 44. Plaintiff saw a gastroenterologist for her condition who provided treatment but Plaintiff reported that it did not work. AR 45-46. On a weekly basis, Plaintiff reports that she has two or three "accidents" which cause her to stay home and alter her daily schedule. AR 45.

When asked about her daily activities, Plaintiff testified she could not perform household chores. AR 48. However, Plaintiff stated she can force herself to do laundry and can sometimes clean the bathroom but she is not able to scrub the bathtub or the toilet hard enough to clean them to her parents' satisfaction. AR 48-49. Plaintiff also testified that she does not sleep well and will sometimes go a week or two without sleeping. AR 47. Plaintiff stated that while she takes sleep medication, it only makes her drowsy but does not help her sleep. AR 48. Plaintiff explained that she finds it hard to care for her son during the week. AR 49. She is unable to help him with his homework, keep his room clean, and without her license she no longer takes him to school or picks him up. AR 49. Plaintiff explained that she is unable to keep a schedule and cannot budget or account for her money. AR 50, 55. Plaintiff also testified that she has been held on a 5150 in the PAC unit on three separate occasions. AR 51. Plaintiff impairments prevent her from maintaining friendships and she is unable to attend church, the movies, or travel to buy a cup of coffee. AR 55.

Thereafter, the ALJ elicited testimony of VE Alan Cummings. AR 56-59. VE Cummings testified that Plaintiff did not have any past relevant work. AR 57. The ALJ asked the VE hypothetical

3

questions, contemplating an individual of claimant's age, education, and work experience. AR 57. The individual can perform simple, repetitive tasks without public contact. AR 57. The VE stated that the hypothetical individual could perform medium unskilled work such as cleaner and kitchen helper, or work as a packager at the light unskilled exertional level. AR 57.

In a second hypothetical question, the ALJ asked the VE to consider the same individual except that this person cannot maintain attention and concentration for more than six hours in an eight-hour workday. AR 58. The VE stated that the hypothetical individual could not perform any full-time work. AR 58.

Thereafter, the ALJ elicited lay witness testimony of Plaintiff's father, Rodney Thompson. Mr. Thompson testified that Plaintiff has lived with him for the past five years and during that time she has suffered with bipolar disorder. AR 59. He stated that he occasionally has to pick up Plaintiff's son from school and because Plaintiff has lost her license he helps take Plaintiff to her medical appointments. AR 59. Mr. Thompson confirmed that Plaintiff was hospitalized on a 5150 hold while their family was moving residences because as he affirmed "changes in her life circumstances make her a little bit more anxious." AR 60-61. Mr. Thompson testified that Plaintiff complains of headaches, pain, and difficulty sleeping but there are some days where she sleeps all day. AR 62.

**Medical Record**

The entire medical record was reviewed by the Court. AR 237-483. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 11-23. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 12, 2011. AR 16. Further, the ALJ identified depressive disorder, borderline personality disorder, and since July 2012, pituitary adenoma as severe impairments. AR 16. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments, or combination of impairments, did not meet or exceed any of the listed impairments. AR 17.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, but can perform only simple repetitive tasks with no public interaction. AR 18.

The ALJ found that although Plaintiff had no past relevant work, Plaintiff could perform a significant number of jobs that exist in the national economy, including the representative jobs of cleaner, kitchen helper, and packager. AR 22. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 2002).

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

5

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant bears the burden of proof to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff contends that the ALJ failed to: (1) indicate the weight he afforded the opinion of the state agency examining physician; and (2) provide clear and convincing reasons for finding Plaintiff's testimony lacked credibility. (Doc. 12 at 6, 10).

## **DISCUSSION**[3]

### 1. The ALJ Adequately Evaluated the Medical Evidence

Plaintiff first challenges the ALJ's disability finding for failing to weigh or provide any reason for accepting or rejecting the opinions of state agency examining physician, Dr. Robert Bilbrey. (Doc. 12 at 8). The Commissioner responds, however, that the ALJ's decision implicitly adopts the opinions of Dr. Bilbrey and the state-agency consultants. (Doc. 13 at 5).

#### A. Dr. Bilbrey

On March 28, 2011, psychological consultative examiner Dr. Bilbrey evaluated Plaintiff's complaints of depression and fibromyalgia. AR 365-369. Dr. Bilbrey diagnosed Plaintiff with depression NOS, r/o Bipolar Disorder; r/o Psychosis; Anxiety Disorder NOS; r/o Cognitive Disorder; and reported a Global Assessment Functioning score of 60. AR 368. Dr. Bilbrey reported that Plaintiff's test results indicated that her overall cognitive functioning was in the range of mild mental retardation. AR 369. He opined that this was an unexpected result, given Plaintiff's history of higher functioning and noted that "further neurological evaluation would be needed to explore the etiology of this impairment." AR 369.

Dr. Bilbrey reported his findings as follows:

> The claimant can avoid simple hazards. She would have marked difficulty interacting adequately with others as evidenced by her interaction with the examiner and clinic

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

personnel. Psychologically, the claimant would have moderate difficulties concentrating or persisting independently at work-related activities at a consistent pace for a normal workday or workweek, or respond to changes in a routine work setting. The claimant appears able to follow one-part instructions and can handle simple tasks but would have moderate difficulty with two-part instructions and marked difficulty learning complex tasks. The claimant may have some difficulty conforming to a schedule, with regular and punctual attendance. The severity of her symptoms should be evaluated by the appropriate specialist. The claimant would not be considered capable of handling funds.

AR 369.

With respect to Dr. Bilbrey's opinion the ALJ summarized Dr. Bilbrey's findings as follows:

On March 28, 2011, the psychological consultative examiner, Dr. Bilbrey diagnosed Ms. Parker with depression, r/o bipolar disorder r/o psychosis and anxiety disorder r/o cognitive disorder, with a GAF of 60. Dr. Bilbrey opined Ms. Parker had "marked difficulty interacting adequately with others," moderate difficulty in concentration, persistence, and pace;" and "some" difficulty "conforming to a schedule, with regular and punctual attendance"

…

For all these reasons, the record shows Ms. Parker can perform simple, repetitive tasks without public contact.

AR 20.

From Dr. Bilbrey's examination, the ALJ opined that "Ms. Parker can perform simple repetitive tasks without public contact." AR 20. Further, ALJ Larsen concluded at the end of step four that "[his] assessment of Ms. Parker's residual functional capacity [was] supported by the opinions of the consultative examiners and the state-agency consultants." AR 21.

### B. Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); s*ee also*, 20 C.F.R. § 416.927(c)(1)-(2).

At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). The ALJ can do this by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998); *accord Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ must do more than offer conclusions; he must set forth his own interpretations based on substantial evidence in the record and explain why they, rather than the doctors', are correct. *Reddick*, 157 F.3d at 725; *accord Thomas*, 278 F.3d at 957. An ALJ "may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Regardless of the source, the ALJ is required to evaluate every medical opinion in the record. 20 C.F.R. § 416.927. Moreover, in determining a claimant's RFC, the ALJ is required to explain in his decision the weight given to each medical opinion. *Id.* It is error to ignore or neglect a physician's medical opinion without providing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

## C. The ALJ Properly Consider the Medical Source Opinions

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting the findings made by Dr. Bilbrey. More specifically, Plaintiff alleges that the ALJ failed to indicate the

weight he assigned to Dr. Bilbrey's opinion and whether he accepted or rejected that opinion. The Court disagrees. The ALJ's assessment of Dr. Bilbrey's opinion was supported by substantial evidence.

The ALJ must detail in the decision the weight given to each medical opinion and explain using substantial evidence in the record why each finding is correct. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (reasoning that without good reasons given by the ALJ for the weight given to medical opinions in the notice of the decision, a reviewing court cannot determine whether the ALJ's decision is adequately supported). "However, in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations omitted). Rather, the ALJ must detail "why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, Plaintiff has failed to demonstrate error in weighing Dr. Bilbrey's opinion for several reasons. First, the ALJ did not implicitly reject Dr. Bilbrey's opinion. Contrary to Plaintiff's argument, the ALJ credited Dr. Bilbrey's opinion by incorporating all of the restrictions Dr. Bilbrey described in Plaintiff's RFC assessment. In determining Plaintiff's RFC, the ALJ found that based on Dr. Bilbrey's opinion, Plaintiff could still perform simple, repetitive tasks, without public contact. AR 20. By including Dr. Bilbrey's limitations, the ALJ implicitly adopted that opinion. This was not error, as an ALJ is not required to give specific and legitimate reasons for rejecting a physician's opinion when that opinion is not rejected. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (an ALJ need not recite "magic words" for the decision to be valid and a reviewing court may draw inferences relevant to the ALJ's analysis "if those inferences are there to be drawn").

Second, the ALJ was not required to individually reference each limitation noted in Dr. Bilbrey's report. *See, e .g., Howard*, 341 F.3d at 1012 (the ALJ does not need to discuss every piece of evidence when interpreting the record). The ALJ's RFC, which included a restriction to simple, routine, and repetitive tasks, is consistent with Dr. Bilbrey's medical opinion. Dr. Bilbrey found that Plaintiff had "marked difficulty interacting with others;" moderate difficulty in concentration,

9

persistence, and pace, or responding to changes in a routine work setting; and "some" difficulty "conforming to a schedule with regular and punctual attendance." AR 20, 365-69. Consistent with that medical evidence, the ALJ appropriately concluded that despite Plaintiff's mild to moderate mental limitations, and trouble interacting with others, Plaintiff could still perform "simple, routine, repetitive tasks" but with no public contact. *See Stubbs-Danielson v. Astrue,* 539 F.3d 1169 (9th Cir. 2008) (an ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated the examining and reviewing physicians' findings that the claimant had a "slow pace" and "several moderate limitations in other mental areas"); *see also Sabin v. Astrue*, 337 Fed. Appx. 617, 620–21 (9th Cir. 2009) (finding ALJ properly assessed medical evidence in determining that despite moderate difficulties as to concentration, persistence, or pace, claimant could perform simple and repetitive tasks on a consistent basis); *McLain v. Astrue*, No. SACV 10–1108 JC, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) ("[m]oderate mental functional limitations ... are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"); *Rodriquez v. Colvin*, No. 1:13–CV–01716–SKO, 2015 WL 1237302, at *6 (E.D. Cal. Mar 17, 2015) (finding that "a moderate limitation in the ability to complete a workday or workweek without interruption is consistent with and properly captured by a limitation to simple repetitive tasks"). Accordingly, the ALJ's RFC assessment—limiting Plaintiff to all simple and repetitive tasks without public contact—encapsulates the limitations found by Dr. Bilbrey.

Further, the ALJ explicitly credited Dr. Bilbrey's opinion together with the opinions of Drs. Middleton, Guyer, Bilik, Jackson, and Garcia in making his RFC assessment. AR 17-21, 173-88, 289, 365-90, 433-35. The ALJ concluded his opinion by stating "in sum, my assessment of Ms. Parker's residual functional capacity is supported by the opinions of the consultative examiners and the state-agency consultants." AR 21. The ALJ correctly relied on these opinions; they were largely consistent with each other and no physician found Plaintiff disabled. Additionally, no physician opined that Plaintiff's mental impairments were severe. Overall, the ALJ adequately weighed the medical evidence and presented a comprehensive summary and analysis in determining Plaintiff's RFC. While Plaintiff points to the ALJ's failure to assign weight to the opinion of Dr. Bilbrey, the Court will not

disturb a well-reasoned opinion because the ALJ did not recite the magic words, "I accept this doctor's opinion because." *See Magallanes*, 881 F.2d at 755. Accordingly, the ALJ's RFC is supported by substantial evidence and free of legal error.

**2.    The ALJ Did Not Err in Discrediting Plaintiff's Subjective Symptom Complaints**

Second, Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding Plaintiff's subjective testimony not credible. The Commissioner contends, however, that the ALJ's credibility findings are sufficiently specific and supported by substantial evidence.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ proffered several reasons for rejecting Plaintiff's impairment testimony. With respect to Plaintiff's credibility, the ALJ found as follows:

> In spite of Ms. Parker's history of psychiatric symptoms, her condition stabilized with treatment and medication therapy. She can think, communicate, and act in her own interest, and adjust to ordinary emotional stress, perform usual activities, and remember and follow basic instructions. She can move about, using the bilateral upper and lower extremities in a satisfactory manner. The evidence shows no muscle weakness or loss of control due to nerve damage. Her allegations of disabling pain and limitation from fibromyalgia are not supported by the evidence of record, which lacks clinical signs or laboratory results showing positive trigger point findings to corroborate those complaints. She alleges daily pain, but the reported frequency and severity are

inconsistent with the objective medical evidence of record. State-agency consultants concluded she could perform simple repetitive tasks, without public contact, in spite of her mental impairments. The internal medicine consultative examiner opined Ms. Parker had no tenderness or pain with movements during the physical examination. She has had very limited conservative treatment for arthritis and fibromyalgia, and a completely normal consultative internal medicine examination with no trigger point tenderness and no tenderness with movement and no pain. She retains the capacity to take care of her son independently, cook, drive, and shop. Consequently, her allegations of disabling pain and limitations are inconsistent with the evidence of the record and are, therefore, not fully credible.

AR 21.

First, the ALJ noted that the record is void of disabling objective medical evidence, yet Plaintiff alleges that she is totally incapacitated by her conditions. Drs. Bilik and Guyer, the reviewing physicians, opined that Plaintiff could perform simple work despite her functional limitations, and Dr. Bilbrey, the examining physician, opined moderate limitations in Plaintiff's ability to perform basic work. AR 365-389. The ALJ reviewed that medical evidence and reasonably determined that it did not fully support Plaintiff's alleged symptoms and limitations. AR 20-21. This was a valid reason to reject Plaintiff's subjective symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Second, the ALJ observed that the record largely contains evidence of conservative treatment and improvement with medication. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of considering eligibility for SSI benefits."). According to the ALJ, despite Plaintiff's "history of psychiatric symptoms, her condition stabilized with treatment and medication therapy." AR 21. The ALJ was entitled to reasonably conclude that Plaintiff's improvement discredited her subjective complaints. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with medication). In addition, the ALJ noted that while Plaintiff alleged disabling arthritis and fibromyalgia, Plaintiff "has had very limited conservative treatment for arthritis and

fibromyalgia." AR 21. *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 96-7p, 1996 SSR LEXIS 4 (An 'individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . ."). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment").

The ALJ also noted inconsistencies between Plaintiff's daily activities and her contention of total disability. AR 21. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ may consider whether the claimant's daily activities are inconsistent with the alleged symptoms). In evaluating Plaintiff's credibility, the ALJ relied, in part, on the third party functional report and letter submitted by Joan Thompson, Plaintiff's mother, and testimony of Rodney Thompson, Plaintiff's father. Mrs. Thompson indicated that Plaintiff transports her son to and from school, helps him with his homework, and takes him to doctor's appointments. AR 173-180, 199-201. Plaintiff feeds, waters, and picks up after her pets. AR 173-180, 199-201. She prepares her own meals, takes care of her own personal hygiene without assistance, and attends medical appointments. AR 173-180, 199-201. She does laundry for herself and her son, and keeps their bedrooms clean. AR 173-180, 199-201. She vacuums once or twice a week for ten to fifteen minutes each time. AR 173-180, 199-201. Mr. Thompson testified that Plaintiff is anxious and she has anger at times as well as difficulty with her son. AR 59-63. Further, Plaintiff has problems counting money and problems sleeping at night. AR 59-63. However, the ALJ found that these statements did not impeach the opinions of the reviewing or examining physicians in this matter. AR 21. The ALJ appropriately considered Plaintiff's activities of daily living, which included daily care, daily activities, and interaction with others.

In sum, the ALJ's credibility findings were thoroughly explained and supported. Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair*, 885 F.2d at 604. By considering Plaintiff's inconsistent statements, her activities of daily living, and the objective medical evidence, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective

complaints. Thus, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, Plaintiff's challenge on this ground fails.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Katina Ann Parker.

IT IS SO ORDERED.

| | |
|---|---|
| Dated: __August 5, 2015__ | /s/ *Barbara A. McAuliffe* <br> UNITED STATES MAGISTRATE JUDGE |